**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Lizardi,<br><br>        Petitioner,<br><br>v.<br><br>Charles L Ryan, et al.,<br><br>        Respondents. | No. CV-18-00373-TUC-JAS (MSD)<br><br>**REPORT AND RECOMMENDATION** |

This matter is on referral to the Court pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure. Pending before the Court is Petitioner Victor Lizardi's pro se Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus, which is now fully briefed. (Docs. 1, 14, 17.) For the following reasons, the Court recommends that the petition be denied.

**I.    Background**

On September 13, 2012, Petitioner was indicted for first-degree murder and armed robbery. (Doc. 14-1 at 3.)[1] Trial commenced on April 16, 2013. (*See id.* at 5.) The State presented evidence that, on the night of August 16, 2011, Petitioner was a passenger in a vehicle being driven by Cecilia Moran when he noticed a parked car owned by the victim, Javier Pareida. (Doc. 14-2 at 38–41.) As Petitioner was determining whether there was anything he could steal from the car, Pareida approached and confronted him. (*Id.* at 42–43.) Petitioner reentered Moran's vehicle, and Moran sped off. (*Id.* at 44.)

---

[1] Record citations refer to the page numbers electronically generated by the Court's filing system, not to the original page numbers in the documents cited.

Pareida followed, yelling at Moran to pull over and grabbing his crotch area as if he had a concealed firearm. (*Id.* at 44–45.) Moran eventually pulled over. (*Id.* at 47.) Pareida exited his car and "tr[ied] to get all hard with" Petitioner. (*Id.* at 47–48.) Petitioner exited Moran's vehicle because he was "not going to let somebody punk him." (*Id.* at 48.) At that point, Pareida recognized Moran as someone he had met through a mutual friend, and the two exchanged phone numbers. (*Id.* at 48–50.) Following the exchange, Pareida retrieved his car keys and dangled them, taunting Petitioner to take them. (*Id.* at 50.) Petitioner drew his firearm and shot Pareida six times, killing him. (*Id.* at 13–18, 51–53.) Petitioner drove away in Pareida's car. (*Id.* at 56–57.) He and Moran later searched the car, taking money from inside. (*Id.* at 57.)

Petitioner was convicted of armed robbery and first-degree murder (on both premeditation and felony-murder theories). (Doc. 14-3 at 2, 5.) He received sentences of natural life and a concurrent term of imprisonment of 10.5 years. (*Id.* at 18–19.) Petitioner appealed, arguing that the evidence was insufficient to uphold his convictions and that a criminal restitution order entered at his sentencing hearing should be vacated. (*See id.* at 27.) On July 11, 2014, the Arizona Court of Appeals vacated the restitution order but upheld Petitioner's convictions. (*Id.* at 72–76.) Petitioner did not seek review in the Arizona Supreme Court. (*Id.* at 78.)

On July 24, 2014, Petitioner filed a notice of post-conviction relief ("PCR"). (Doc. 14-3 at 82–85.) On January 19, 2016, Petitioner filed a PCR petition raising the following claims:

1. Was trial counsel ineffective for failing to properly argue the admissibility of evidence about the victim's prior conduct, and was appellate counsel ineffective for not raising the issue on appeal?
2. Was trial counsel ineffective for failing to call David Pesina as a witness?
3. Was trial counsel ineffective for advising Petitioner to not testify?
4. Was trial counsel ineffective for failing to object during closing argument to the prosecutor's purportedly incorrect statement regarding the law of self-defense?

5. Did the prosecutor engage in misconduct by commenting on Petitioner's failure to testify? Was trial counsel ineffective for failing to object, and was appellate counsel ineffective for not raising the issue on appeal?

6. Was it error to not instruct the jury regarding the rules of defense of property? Was trial counsel ineffective for not requesting such an instruction, and was appellate counsel ineffective for not raising the issue on appeal?

(*Id.* at 87–104.)

On May 10, 2016, the PCR court summarily dismissed the fourth and fifth claims as without merit. (Doc. 1-1 at 51–52.) Following an evidentiary hearing on the remaining claims, the PCR court issued a written ruling denying the PCR petition in its entirety. (Doc. 14-4 at 59–62.) Petitioner sought review of all his claims in the Arizona Court of Appeals. (*Id.* at 64–83.) On January 25, 2017, the Arizona Court of Appeals denied Petitioner's claims on the merits, finding that counsel was not deficient. (*Id.* at 85–91.) The Arizona Supreme Court denied review on August 2, 2017. (*Id.* at 93.)

Petitioner filed the instant petition on August 1, 2018, presenting the same claims and arguments raised in the PCR petition. (Doc. 1 at 26–30.) Respondents answered, arguing that because the Arizona Court of Appeals' decision is both legally and factually correct, Petitioner cannot satisfy 28 U.S.C. § 2254(d). (Doc. 14 at 16–23.)

## II. Standard of Review

### A. Antiterrorism and Effective Death Penalty Act of 1996

Because Petitioner filed his federal habeas petition after April 24, 1996, the petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014).

Under AEDPA, the Court may not grant relief on any claim decided on the merits in state court unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). A

decision is contrary to clearly established federal law if it applies a rule that contradicts the law as set forth in Supreme Court cases, or if it reaches a result different from a Supreme Court case that is materially indistinguishable on the facts. *Tamplin v. Muniz*, 894 F.3d 1076, 1082 (9th Cir. 2018) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A decision unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 1083 (quoting *Mann v. Ryan*, 828 F.3d 1143, 1151 (9th Cir. 2016) (en banc)). A decision is based on an unreasonable determination of fact if "an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Id.* (quoting *Murray*, 745 F.3d at 999).

In determining whether the strictures of § 2254(d) have been satisfied, federal courts look to the last reasoned state-court decision. *Martinez v. Cate*, 903 F.3d 982, 991 (9th Cir. 2018). Here, that is the Arizona Court of Appeals' memorandum decision denying PCR relief.

### B. Ineffective Assistance of Counsel

Petitioner's claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner asserting a claim of ineffective assistance of counsel must show both deficient performance and prejudice. *Id.* at 687. To establish deficient performance, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In considering whether counsel was deficient, federal courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Review of ineffective-assistance claims under § 2254(d) is "doubly deferential"

because "*Strickland* instructs courts to review a defense counsel's effectiveness with great deference, and AEDPA requires federal courts to defer to the state court's decision unless its application of Supreme Court precedent was objectively unreasonable." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal citations omitted).

### III. Discussion[2]

Each of Petitioner's claims will be discussed in turn. It is important to note, however, that Petitioner does not present any meaningful argument that the Arizona Court of Appeals' decision was objectively unreasonable under 28 U.S.C. § 2254(d). He merely repeats (almost verbatim) the arguments the state court found unpersuasive, without regard to the heightened deference this Court owes to the state court's decision. For this reason, Petitioner has failed to meet his burden of satisfying § 2254(d). *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (stating that "[t]he petitioner carries the burden of proof" with respect to § 2254(d)). In any event, the record reveals that Petitioner would not have been able to satisfy § 2254(d) had he attempted to do so.

#### A. Claim One

Petitioner's first claim relates to counsel's unsuccessful attempt to have certain evidence introduced at trial. Itza Rodriguez and Amber Sandoval told counsel that they had an altercation with Pareida immediately before the shooting, and that Pareida was drunk and brandished a firearm in anger. (Doc. 14-1 at 10–13.) Counsel argued that although Petitioner was unaware of the altercation at the time of the shooting, the altercation was nevertheless relevant "to explain [Pareida's] aggressive frame of mind and the fact that he had a gun." (*Id.* at 14.) The trial court ruled that Rodriguez's and Sandoval's testimony would be admissible only for whether Pareida was drunk and in possession of a firearm, not for whether Pareida was angry and brandished a firearm. (*Id.* at 18.)

Petitioner asserts that counsel was ineffective for failing to "properly" advocate for admission of the full scope of Rodriguez's and Sandoval's testimony. He faults counsel

---

[2] Respondents concede that the petition is timely. They do not raise any exhaustion or procedural-default defense.

for not arguing that the testimony was admissible character evidence under Rule 404(a) and Rule 405(b) of the Arizona Rules of Evidence. He also faults counsel for not arguing that the testimony was admissible because it would have "buttressed" Moran's testimony that she believed Pareida had a concealed firearm.

The Arizona Court of Appeals rejected both arguments. (Doc. 14-4 at 89.) As to the first argument, the court explained that, "under Arizona law, a defendant raising self-defense 'may not introduce evidence of specific acts unknown to the defendant at the time of the alleged crime to show that the victim was the initial aggressor.'" (*Id.* (quoting *State v. Fish*, 213 P.3d 258, 270 (Ariz. Ct. App. 2009)).) The court rejected Petitioner's second argument because he cited no authority that evidence is admissible merely because it would bolster other witnesses' testimony. (*Id.*) Because Petitioner identified no basis on which to find Rodriguez's and Sandoval's testimony admissible, the court concluded that Petitioner's "claims of ineffective assistance fail." (*Id.*)

This was not an objectively unreasonable application of *Strickland*. Petitioner is incorrect that Rodriguez's and Sandoval's testimony would be admissible under the cited evidentiary rules, and he offers no legal authority for his second theory of admissibility. *See Fish*, 213 P.3d at 270. Failing to present arguments that are either contrary to or unsupported by the law does not constitute ineffective assistance of counsel. *See Sanders v. Cullen*, 873 F.3d 778, 815 (9th Cir. 2017). Thus, the state court could reasonably conclude that counsel was not deficient.

**B.     Claim Two & Claim Three**

In his second claim, Petitioner asserts that counsel was ineffective for failing to call David Pesina as a witness at trial. Pesina, who was also a passenger in the vehicle being driven by Moran, told investigators that he heard Pareida threaten to "cap" them. (Doc. 14-2 at 68; Doc. 14-4 at 27.) Petitioner contends that Pesina's testimony would have corroborated Moran, who testified that she believed Pareida was armed and threatening.

The Arizona Court of Appeals found that the decision to not call Pesina was reasonable trial strategy. (Doc. 14-4 at 89–90.) This was not an objectively unreasonable

application of *Strickland*. Pesina also told investigators that Petitioner killed Pareida for taunting Petitioner. (*Id.* at 32.) Because such testimony would severely undermine Petitioner's claim of self-defense, it was reasonable not to call Pesina. *See Gulbrandson v. Ryan*, 738 F.3d 976, 989 (9th Cir. 2013), *as amended* (holding that defense counsel could have reasonably decided to exclude witness testimony as harmful). Thus, Petitioner's second claim should be denied.

Petitioner's third claim was also rejected by the Arizona Court of Appeals as reasonable trial strategy. He asserts that counsel was ineffective for "strongly" advising him not to testify, but he concedes that, had he testified, he would have been subject to cross-examination regarding a prior felony conviction. (*See* Doc. 1-2 at 49.) Under these circumstances, counsel could have reasonably concluded that Petitioner's testimony would do more harm than good. *See Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000) (holding that defense counsel reasonably advised defendant not to testify based on defendant's prior convictions); *Medley v. Runnels*, 506 F.3d 857, 861 (9th Cir. 2007) (en banc) (same). Because it was not objectively unreasonable for the Arizona Court of Appeals to reach the same conclusion, Petitioner's third claim should be denied.

### C. Claim Four & Claim Five

Petitioner's fourth claim pertains to a statement made by the prosecutor during closing argument. On the law of self-defense, the prosecutor told the jury that "you're justified in using . . . deadly force if deadly force is used against you." (Doc. 14-2 at 197.) Petitioner asserts that counsel was ineffective for failing to object to the statement; he contends that it led the jury to believe that deadly force may be used only in response to the *actual* use of deadly force, when in fact deadly force may also be used in response to the *threatened* use of deadly force. (*See id.* at 187.)

Petitioner's fifth claim pertains to the following statement made by the prosecutor during rebuttal closing: "And who testified that [Petitioner] thought [Pareida] had a gun? Nobody." (Doc. 14-2 at 210–11.) Petitioner asserts that counsel was ineffective for failing to object. He says that the statement was an improper comment on his failure to testify

because no one else could have known what he was thinking when he started shooting.

The Arizona Court of Appeals found that even if the statements were objectionable, "counsel might have foregone objecting to avoid drawing attention to" them. (Doc. 14-4 at 90.) This was not an objectively unreasonable application of *Strickland*. The *Strickland* analysis begins with the presumption that, "under the circumstances, the challenged action might be considered sound trial strategy." *Visciotti v. Martel*, 862 F.3d 749, 769 (9th Cir. 2016) (quoting *Carrera v. Ayers*, 670 F.3d 938, 943 (9th Cir. 2011)). "Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct." *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993) (quoting *Strickland*, 466 U.S. at 689).

The comments are not egregious misstatements. *Cf. Zapata v. Vasquez*, 788 F.3d 1106, 1112–24 (9th Cir. 2015) (finding deficient performance and prejudice where defense counsel failed to object to the "prosecutor's inflammatory, fabricated, and ethnically charged epithets, delivered in the moments before the jury was sent to deliberate"). The statement regarding self-defense, though an incomplete statement of the law, is not technically incorrect.[3] And, although a closer question, the statement regarding what Petitioner was thinking could reasonably be construed as a permissible comment on the lack of evidence supporting Petitioner's claim that he shot Pareida before Pareida could shoot him. *See United States v. Johnson*, 767 F.3d 815, 824–25 (9th Cir. 20114) (stating that the prosecutor can permissibly "call attention to the defendant's failure to present exculpatory evidence more generally" (citation omitted)). In any case, both statements were brief, and neither was egregious.

Thus, the state court did not unreasonably apply *Strickland* in concluding that counsel's failure to object could have been a reasonable, strategic decision to avoid

---

[3] Furthermore, the prosecutor told the jury several times to consult the definition of "self-defense" provided in their instruction packets. (Doc. 14-2 at 197, 199, 210.) Petitioner concedes that the self-defense instruction was correct. Thus, even if counsel were deficient in failing to object, there was no prejudice.

highlighting the statements. *See Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) (finding counsel was not deficient for failing to object, where the failure was "possibly to avoid highlighting" the objectionable statement). Petitioner's fourth and fifth claims should therefore be denied.

### D. Claim Six

In his sixth claim, Petitioner argues that counsel was ineffective for failing to request a jury instruction that Pareida was not permitted to use deadly force to prevent the theft of his car. He contends that the instruction was necessary to counter the prosecutor's suggestion that "there are no legal boundaries as to what a victim of an attempted car theft may do to apprehend the would-be thief." Counsel admitted at the evidentiary hearing that he never thought to request such an instruction. (Doc. 14-4 at 52.)

The Arizona Court of Appeals found that Petitioner failed to show deficient performance or prejudice. (*Id.* at 91.) As to deficient performance, the court explained that Petitioner had identified no evidence or authority "suggesting the failure to request the instruction fell below prevailing professional norms." (*Id.*) As to prejudice, the court explained that Petitioner had not "developed any argument that the jury convicted him because it believed the victim was legally justified in pursuing and confronting him." (*Id.*)

This was not an objectively unreasonable application of *Strickland*. Petitioner conceded at the beginning of trial that he shot Pareida. (*See* Doc. 14-1 at 45, 55–56.) The primary issue was whether he was justified in doing so. (*See id.* at 55–57.) He agrees that the trial court correctly instructed the jury on self-defense, and it is clear from the record that counsel's closing argument put the issue of self-defense squarely in front of the jury:

> But the law in its wisdom says the State has to prove that what [Petitioner] did was not self-defense. It's in your packet. [Petitioner] doesn't have to prove that he acted in self-defense. [The State] has to prove that he didn't act in self-defense.
> And if you look at all that was going on in this case, if you look at the behavior of [Pareida], which was certainly not reasonable, it was not somebody confronting somebody stealing his car.

(Doc. 14-2 at 201.)

Under these circumstances, the state court could reasonably conclude that counsel

was not deficient in failing to request an instruction on a collateral issue (i.e., what Pareida was entitled to do in response to the attempted theft of his car). *See Weighall v. Middle*, 215 F.3d 1058, 1063 (9th Cir. 2000) (rejecting ineffective-assistance claim based on failure to request specific instruction where combination of correct general instruction and closing argument "put the issue [of self-defense] squarely before the jury"). Consequently, Petitioner's sixth claim should be denied.

### E. Other Claims

Petitioner asserts that his appellate counsel rendered ineffective assistance on direct appeal by not raising the issues presented in his first, fifth, and sixth claims. Because he has failed to establish that trial counsel was deficient for not raising those issues, however, he cannot establish that appellate counsel was deficient for not raising them. *See United States v. Moore*, 921 F.2d 207, 210–11 (9th Cir. 1990).

Petitioner also asserts that the cumulative effect of counsel's errors requires the granting of habeas relief. This claim is without merit, however, because he has not shown that counsel committed any prejudicial error. *See Sanders*, 873 F.3d at 815 (rejecting claim of cumulative error where petitioner failed to show "there were multiple deficiencies in his guilt-phase trial").

Accordingly,

**IT IS RECOMMENDED** that Petitioner Victor Lizardi's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1) be **denied** and **dismissed with prejudice**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability be denied because Petitioner has not made a substantial showing of the denial of a federal constitutional right, and jurists of reason would not find the Court's assessment of Petitioner's constitutional claims "debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's

| | |
|---|---|
| 1 | judgment. The parties shall have fourteen days from the date of service of a copy of this |
| 2 | recommendation within which to file specific written objections with the District Court. |
| 3 | *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The parties shall have fourteen days |
| 4 | within which to file responses to any objections. Filed objections should use the following |
| 5 | case number: No. CV-18-00373-TUC-JAS. |
| 6 |       Failure to file timely objections to the Magistrate Judge's Report and |
| 7 | Recommendation may result in the acceptance of the Report and Recommendation by the |
| 8 | District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, |
| 9 | 1121 (9th Cir. 2003) (en banc). Failure to file timely objections to any factual |
| 10 | determination of the Magistrate Judge may be considered a waiver of a party's right to |
| 11 | appellate review of the findings of fact in an order or judgment entered pursuant to the |
| 12 | Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72. |
| 13 |       Dated this 15th day of July, 2019. |

_____
Maria Davila
United States Magistrate Judge